IN THE UNITED STATES DISTRICT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LOURDES SALAS ROMERO and DANIELA VELAZCO SALAS, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHFIELD FOODS, INC.,<br><br>[Serve: CT Corporation System<br>120 S. Central Ave.<br>Clayton, MO 63105],<br><br>and<br><br>KANSAS CITY SAUSAGE COMPANY, LLC,<br><br>[Serve: CT Corporation System<br>120 S. Central Ave.<br>Clayton, MO 63105],<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their counsel, for their Complaint against Defendants Smithfield Foods, Inc. ("Smithfield Foods") and Kansas City Sausage Company, LLC ("KC Sausage") (hereinafter jointly referred to as "Defendants"), hereby state and allege as follows:

1. Defendant Smithfield Foods is a $15 billion global food company and the world's largest pork processor and hog producer. *See* https://www.smithfieldfoods.com/newsroom/press-releases-and-news/smithfield-foods-acquires-kansas-city-sausage-company

2. Defendant KC Sausage is the leading U.S. pre-rigor sausage producer and processor, and operates a facility located in Kansas City, Missouri (the "Kansas City facility").

3. Upon information and belief, Defendants Smithfield and KC Sausage operated the Kansas City facility as a 50/50 joint venture from 2013 until August 2017. On or about August 14, 2017, Defendant Smithfield fully acquired Defendant KC Sausage, and upon information and belief continued the same policies and practices at the Kansas City facility that were in place while it was operated as a joint venture.

4. Upon information and belief, the Kansas City facility employs approximately 100 to 150 line workers paid on an hourly wage.

5. Plaintiffs previously worked as hourly line workers (also called "production employees") at Defendants' Kansas City facility in the last three years. This lawsuit is brought as a collective action under the FLSA and as a class action under Missouri state law to recover unpaid wages owed to Plaintiffs and all other similarly situated line workers employed at the Kansas City facility.

6. The United States Supreme Court repeatedly held that, among other things, preparatory work duties that are integral and indispensable to the principal work activity are compensable under the FLSA. *See IBP, Inc. v. Alvarez*, 126 S. Ct. 514 (2005); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). Both *Alvarez* and *Tyson* arose in the donning and doffing context in meat processing plants and are directly applicable to the Kansas City facility operated by Defendants.

7. Plaintiffs and other similarly situated employees engage in numerous preparatory activities, as well as related work activities performed at the end of the work day, and during their lunch breaks, that are integral and indispensable for them to perform their duties. It is Defendants'

policy and practice to deny earned wages and overtime pay to their line workers at the Kansas City facility. Accordingly, under the holding of *Alvarez*, as well as under consistent rulings and interpretations of the United States Department of Labor, Plaintiffs and all other similarly situated employees are entitled to compensation for the time they spend working pre-shift and post-shift, and before and after their lunch breaks. Defendants' deliberate failure to pay its line workers their earned wages and overtime compensation violates the Fair Labor Standards Act ("FLSA") and Missouri state law.

## JURISDICTION AND VENUE

8. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. This Court has jurisdiction over Plaintiffs' claims for breach of contract, and unjust enrichment pursuant to: (1) 28 U.S.C. § 1332(a) in that Plaintiffs are residents of a different state than Defendant Smithfield Foods and the amount in controversy exceeds $75,000.00; (2) 28 U.S.C. § 1332(d) because the Plaintiffs are residents of a different state than Defendant Smithfield Foods and, upon information and belief, the amount in controversy exceeds $5 million; and, (3) 28 U.S.C. § 1367 because the state claims against both Defendants are so related to the FLSA claim that they form part of the same case or controversy.

10. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this jurisdiction.

## PARTIES

11. Defendant Smithfield Foods is a Virginia corporation, with its principal place of business in Virginia. Defendant Smithfield Foods can be served through its registered agent CT Corporation System, at 120 South Central Avenue, Clayton, Missouri 63105.

3

12. Defendant KC Sausage is a Delaware corporation, with its principal place of business in Missouri. Defendant KC Sausage can be served through its registered agent CT Corporation System, at 120 South Central Avenue, Clayton, Missouri 63105.

13. Plaintiffs are former line workers/production employees at Defendants' Kansas City facility. At the time they were employed by Defendants, Plaintiffs were both Missouri residents. Plaintiff Lourdes Salas Romero is currently a Missouri resident. Plaintiff Daniela Velazco Salas is currently a Kansas resident. Plaintiffs' Consents to Become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) are attached hereto as **Exhibit A**.

## FACTUAL ALLEGATIONS

14. Defendants operate the Kansas City facility where its line workers produce a variety of products, including Smithfield Breakfast Sausage, Smithfield Craft Collection Seasonal Brats and Carando Meatballs. There are six production lines at the Kansas City facility.

15. When Plaintiffs began working at the Kansas City facility, they received an employee handbook ("Defendants' Handbook") which stated that the employees were not represented by a union. Upon information and belief, the Kansas City facility is still a non-union facility.

16. Plaintiffs and other similarly situated employees at the Kansas City facility are required to perform work for which they are not paid.

17. Specifically, Plaintiffs and other similarly situated employees are paid based on their shift time, and/or for their "line time" and not the actual time spent working on behalf of Defendants, including the time spent donning and doffing required clothing and safety equipment, including gloves, sleeves, work boots, aprons, hair nets, eye protection and earplugs.

18. Plaintiffs and other similarly situated employees are required to be dressed in all appropriate clothing and safety equipment at the start of their scheduled work time, and the start of their scheduled return time from lunch. Defendants also require their employees to perform various sanitary activities before entering and upon leaving the production floor, include washing their hands and cleaning their required work boots.

19. In addition to putting on all of the required clothing and safety equipment at the beginning of their shift, Plaintiffs and other similarly situated employees have to remove and replace clothing and equipment for the lunch break, and then remove all of the required clothing and equipment at the end of the shift, including but not limited to disposing of the gloves, aprons, etc., and cleaning the work boots.

20. However, Defendants only compensate Plaintiffs and other similarly situated employees 6 (six) minutes per day for this time, even though the total time spent on this process (at the beginning of the shift, during the shift around the lunch break, and at the end of the shift) is much longer than 6 (six) minutes.

21. Defendants' Handbook expressly states that all line workers or production Employees are subject to this same policy:

> **Line Time**
> Kansas City Sausage Company, LLC compensates production Employees on a line-time basis. Normal shift start time is at 8:00 am and employees are expected to be dressed in all appropriate PPE and be at their work stations at the scheduled start time. Employees are paid 6 minutes per day for clothes changing time and this will be reflected on each employee's time sheet and pay information.

22. Plaintiffs and other similarly situated employees actually utilize a time clock and also use biometric (thumbprint) security procedures that would track when they arrived at and departed from the Kansas City facility. However, upon information and belief, those systems are

5

not used to determine compensation, and the Defendants merely compensate Plaintiffs and other similarly situated employees a flat 6 (six) minutes a day regardless of the actual amount of time spent on these required, integral and indispensable activities.

23. Defendants' policy is to only pay Plaintiffs and other similarly situated production employees for six minutes of their time spent "donning and doffing." The work duties for which Plaintiff and other similarly situated employees are not paid include, but are not limited to: (1) changing into and out of the required work uniforms and protective safety equipment, that can include, among other things gloves, sleeves, work boots, aprons, hair nets, eye protection, and earplugs; (2) walking to and from the changing area and work areas; and (3) cleaning and sanitizing work boots before during and after shift.

24. The work activities for which Plaintiffs and other similarly situated employees are not paid are integral and indispensable to their principal job duties and/or are themselves principal duties, and also fall within the "continuous workday."

25. The protective gear that Plaintiffs and other similarly situated employees must wear, and for which they are not fully paid for donning and doffing, is required by Defendants and/or by government regulation. The jobs of Plaintiffs and other similarly situated employees are dangerous and involve serious health and safety risks. The circumstances of these jobs, including vital considerations of health and hygiene, require line workers to wear the required work uniforms and protective safety equipment. Plaintiffs and other similarly situated employees must don and doff these required uniforms and protective safety equipment on Defendants' premises.

26. These donning, doffing and walking duties that occur during the continuous workday all add up to a significant amount of time every day for which Plaintiffs and other similarly situated line workers/ production employees are not paid.

27. Defendants actually track some of the time that line workers/production employees are spending working, as employees are logging into various systems of the Defendants during their shifts. However, instead of utilizing this information to accurately compensate employees, Defendants instead only compensate employees for 6 (six) minutes' worth of this time.

28. Despite being aware that the work done donning and doffing is compensable time, Defendants have not taken any steps to ensure that all such time is being compensated. Instead of accurately capturing this time, Defendants have instead merely adopted an artificially low estimate of this time, and have not compensated employees for the time actually worked. The net effect of Defendants' policy and practice, instituted and approved by company managers, is that Defendants willfully fail to pay for the hours worked, fail to pay overtime for the time worked in excess of 40 hours a week, and willfully fail to keep accurate time records in order to save payroll costs. Defendants enjoy ill-gained profits at the expense of their hourly employees.

## **COLLECTIVE AND CLASS ALLEGATIONS**

29. Plaintiffs brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other line workers employed within the last three years. In addition, Plaintiffs ("Class Representatives") bring Counts II, III and IV (Missouri Minimum Wage Law ("MMWL"), breach of contract and unjust enrichment), as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and as representatives of the following class:

> All current and former line workers employed by Defendant who worked at the Kansas City facility and were not paid for time spent donning and doffing required articles and walking to and from their work stations (1) for the MMWL during the past two years and (2) for the breach of contract and unjust enrichment during the last five years.

30. The FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b). The state law claims, if certified for class-wide treatment, may be pursued by all similarly-situated persons who do not opt-out of the class.

31. Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Defendants' practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Defendants, and potential class members may easily and quickly be notified of the pendency of this action.

32. Plaintiffs' state law claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

33. Plaintiffs are members of the proposed class.

34. The class satisfies the numerosity standards. The class is believed to number in the hundreds. As a result, joinder of all class members in a single action is impracticable. Further, as noted, each of the class members is, however, readily identifiable using objective criteria from the information and records in the possession or control of Defendants. Class members may be informed of the pendency of this class action through posting, direct mail and electronic mail.

35. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

    a. Whether line workers are compensated for all time spent donning and doffing clothing and protective gear and walking to and from their job posts;

8

b. Whether the donning and doffing of certain required uniforms and protective gear constitutes and integral and indispensable activity;

c. Whether the donning and doffing of certain required uniforms and protective gear begins the continuous workday;

d. Whether Defendants failed to keep accurate records of the actual time workers spent performing compensable activities;

e. Whether Defendants' pay policies and practices compensate workers for all of the time they spend working during the continuous workday;

f. Whether Defendants' compensation policy and practice accounts for all of the time line workers are actually working;

g. Whether Defendants' compensation policy and practice is illegal; and,

h. Whether Defendants acted in good faith or willfully violated the FLSA.

36. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior, with respect to considerations of consistency, economy, manageability, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the state law claims.

37. The Class Representatives' claims are typical of those of the class in that class members have been employed in the same or similar positions as the Class Representatives and were subject to the same or similar unlawful practices as the Class Representatives.

38. The Class Representatives are adequate representatives of the class because they are members of the class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by the Class Representatives and their undersigned counsel, who have extensive

experience prosecuting complex wage and hour, employment and class action lawsuits. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.

39. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

40. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

### COUNT I: Violation of the Fair Labor Standards Act of 1938
### (Brought Against Defendants by the Individually-Named Plaintiffs and on Behalf of All Others Similarly Situated)

41. Plaintiffs reassert and re-allege the allegations set forth in the above paragraphs.

42. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et. seq*.

43. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in commerce, or engaged in the

production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

44. Defendants were, and are, subject to the recordkeeping, minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in commerce, and the production of goods for commerce, and their employees are engaged in commerce.

45. Defendants violated the FLSA by failing to pay their workers for all of their time worked, including overtime. In the course of perpetrating these unlawful practices, Defendants have also willfully failed to keep accurate records of all hours worked by line workers/production employees.

46. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees. Accordingly, Plaintiffs and all other similarly situated employees must be paid overtime pay in accordance with the FLSA.

47. The individually-named Plaintiffs and all similarly situated employees are victims of a uniform and facility-wide compensation policy and practice. This uniform policy and practice, in violation of the FLSA, has been applied to Plaintiffs and all similarly situated employees.

48. Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and/or overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether, their conduct was prohibited by the FLSA.

49. Defendants have not acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an

amount equal to the amount of unpaid pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did not act willfully in failing to pay wages, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

50. As a result of the aforesaid willful violations of the FLSA, minimum wage and/or overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees for which Defendants are liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs of this action.

WHEREFORE, Plaintiffs and all similarly-situated employees demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT II: Failure to Pay Wages Pursuant to Mo. Rev. Stat. §§ 290.500 *Et Seq.* (Brought Against Defendants by Class Representatives on Behalf of Class)

51. Plaintiffs reassert and reallege the allegations set forth in the above paragraphs.

52. Plaintiffs and the class of other similarly situated employees were employed as line workers/production employees by Defendants and were not paid for all of their time worked, including time spent pre-shift, post-shift and before and after their lunch breaks donning and doffing required clothing and safety equipment.

53. Said work often required Plaintiffs and the class to work in excess of forty (40) hours per week.

12

54. Plaintiff and the class of other similarly situated line workers/ production employees were treated as non-exempt employees by the Defendants under the Missouri Wage statutes.

55. The Missouri wage laws require each covered employer, such as Defendants, to compensate all non-exempt employees for services performed at the proper rate of pay and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

56. All similarly situated employees working for Defendants are similarly situated in that they were not fully compensated for the time spent pre-shift, post-shift and before and after breaks donning and doffing required clothing and safety equipment, as well as time spent performing various sanitary activities.

57. These employees are similarly situated in that they are all subject to Defendants' identical compensation policies and plan that fails to lawfully compensate them.

58. This Complaint is brought and maintained as a class action for all state law claims asserted by the Plaintiffs because their claims are similar to the claims of the class members.

59. The names and addresses of the class members are available from Defendants.

60. The Defendants failed to compensate Plaintiffs and the class members at the proper rate of pay, and therefore, Defendants have violated, and continue to violate, the Missouri wage laws, Mo. Rev. Stat. §§ 290.500, *et. seq.*

61. The Plaintiffs, on behalf of themselves and all similarly situated employees of Defendants who compose the class, seek damages in the amount of all respective unpaid minimum and overtime wages and straight time plus liquidated damages, as provided by the MMWL and such legal and equitable relief as the Court deems just and proper.

13

62. The Plaintiffs, on behalf of themselves and all similarly situated employees of Defendants who compose the class, seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by Mo. Rev. Stat. §§ 290.500, *et. seq*.

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed class members, demand judgment against Defendants and pray for: (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members, apprising them of the pendency of this action; (2) designation of Plaintiffs as Representative Plaintiffs, acting for and on behalf of the class members; (3) compensatory damages; (4) liquidated damages; (5) attorneys' fees and costs; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other relief as the Court deems fair and equitable

## COUNT III: Breach of Contract
### (Brought Against Defendants by Class Representatives on Behalf of Class)

63. Plaintiffs reassert and reallege the allegations set forth in the above paragraphs.

64. At the time the Plaintiffs and the Class were employed by Defendants, they were hired to work at a fixed hourly wage rate. Defendants, in turn, agreed to pay the Plaintiffs and the Class an expressly stated rate of pay that the employee would earn for each hour worked.

65. For each hour Plaintiffs and the Class worked "off-the-clock" in their tenure with Defendants, they did not receive any compensation from Defendants. This violated the parties' employment agreements.

66. Hours that the Plaintiffs and the Class worked "off-the-clock" were at the direction and behest of Defendants, not voluntarily performed, but done with the expectation of earning their respective hourly wage.

67. Defendants are liable to the Plaintiffs and the Class for the damages incurred as a result of Defendants' failure to pay them for their off-the-clock-work.

WHEREFORE, Plaintiffs and all similarly-situated employees demand judgment against Defendants and pray for (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members, apprising them of the pendency of this action; (2) designation of Plaintiffs as Representative Plaintiffs, acting for and on behalf of the class members; (3) compensatory damages; (4) pre-judgment and post-judgment interest; (5) fees and costs; and (6) such other relief as the Court deems fair and equitable.

## COUNT IV: Unjust Enrichment
### (Brought Against Defendants by Class Representatives on Behalf of the Class)

68. Plaintiffs reassert and re-allege the allegations set forth in the above paragraphs.

69. Plaintiffs conferred a benefit upon Defendants by working on their behalf without compensation.

70. Defendants had an appreciation or knowledge of the benefit conferred by Plaintiffs.

71. Defendants accepted and retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

WHEREFORE, Plaintiffs and all similarly-situated employees demand judgment against Defendants and pray for (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members, apprising them of the pendency of this action; (2) designation of Plaintiffs as Representative Plaintiffs, acting for and on behalf of the class members; (3) compensatory damages; (4) pre-judgment and post-judgment interest; (5) fees and costs; and (6) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request trial by jury of all issues triable by jury.

Dated: February 22, 2019

Respectfully Submitted,

| **CRIMMINS LAW FIRM, LLC** | **HODES LAW FIRM, LLC** |
|---|---|
| */s/ Matthew R. Crimmins* | */s/ Garrett M. Hodes* |
| Matthew R. Crimmins, MO #53138 | Garrett M. Hodes – Mo. Bar. #50221 |
| Virginia Stevens Crimmins, MO #53139 | Hodes Law Firm, LLC |
| 214 S. Spring Street | 900 Westport Road, 2nd Floor |
| Independence, Missouri 64050 | Kansas City, Missouri 64111 |
| Tel: (816) 974-7220 | (816) 931-1718 (Phone) |
| Fax: (855) 974-7020 | (816) 994-6276 (Fax) |
| m.crimmins@crimminslawfirm.com | garrett@hodeslawfirm.com |
| v.crimmins@crimminslawfirm.com | |

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASS**